[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Nancy C. Monteiro, and the defendant, were married at Milwood, New York on July 7, 1979. Both parties have resided in the state of Connecticut for more than one year immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage, Martin Christian Ollinger, born June 1, 1984. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. The state of Connecticut has not contributed to the support of either of the parties or the minor child.
During the first five years of the parties' marriage, the plaintiff worked for a bank in New York. She became the assistant branch manager of that bank. The plaintiff has a two year college degree. The plaintiff worked until May of 1984, approximately one month prior to the birth of the minor child. After the child was born, the parties agreed that the plaintiff would stay at home to care for the child, which she did. The parties separated approximately two years ago. Between the period of 1984 and the date of separation of the parties in 1994, the plaintiff was not gainfully employed outside of the home. She did earn some funds stuffing envelopes in the family home. The plaintiff obtained CT Page 5118-V part-time employment in 1994, while studying for her real estate license. She is presently working full time as a realtor. As a result of the plaintiff terminating her bank position approximately one month before the birth of the child and remaining home to raise the child, her career in banking has been adversely affected. She would probably be a branch manager at this time if she had not quit her job. The plaintiff is forty-one years old. When the defendant vacated the family home in May of 1994, the parties had a joint bank account with a $7000 balance. The plaintiff withdrew all of the funds and closed the account.
During the calendar year 1995, the plaintiff earned $17,794.55 as a realtor. The defendant has been paying to the plaintiff, on a voluntary basis, $443 weekly for the past year to year and one-half. He has also paid additional costs on a voluntary basis.
The plaintiff's financial affidavit does not reflect certain bonds that are in her name that are in the defendant's possession. The approximate fair market value of those bonds is $3500. The bonds are series E and/or series EE, and are different from the series E and series EE bonds shown on the defendant's financial affidavit. The plaintiff is presently earning $350 gross weekly from her employment and a net weekly amount of $273. She has miscellaneous credit card debts with a balance of $500. Her home has a fair market value of $147,000 with a mortgage of $103,000 and a net equity of $44,000. She presently leases the motor vehicle that she drives. She has $6500 in her bank account and $480 in stock. The plaintiff has paid a total of $4000 in legal fees to date and owes an additional $7500.
The defendant has a four year college degree. The defendant is forty-nine years old.
The defendant's current financial affidavit shows various deferred compensation plans with a market value of $135,960. The court finds that the market value of those plans is $135,960. All of those deferred compensation plans were acquired during the course of the marriage between the parties. The defendant's current financial affidavit shows the value of his residence as $129,000. The court finds that the value of that property is $131,250. The property has a mortgage of $75,000, leaving an equity of $56,250. The defendant owns a 1992 Saturn with a fair market value of $4000. He does not have any loan on the vehicle. The defendant has paid a total of $10,000 to date to his CT Page 5118-W attorney. There was held in escrow, by his attorney, from the $10,000, the sum of $4520 prior to the commencement of the trial. Most of the $4520 retainer held in escrow, has been used up by the time the trial was completed. The defendant has life insurance with a total cash surrender value of $15,990. It consists of a policy through Northwest Mutual Life with a cash surrender value of $9768, and a U.S. government policy with a cash surrender value of $6222. The face amount of the life insurance through Northwest Mutual Life is $26,086. That policy commenced in 1973. The monthly premium on that policy is $19.53. The face amount of the U.S. government policy is $10,000. He also has a group term policy in the face amount of $148,000. The $10,000 U.S. government policy was purchased by the defendant in 1973. He was discharged from the Navy in 1972. He paid the premiums on that policy for approximately twenty years. The defendant has series E and series EE bonds with a value of $5066. He has a checking and savings account with a combined value of $12,679. The defendant has been employed for a number of years working for various banks as a commercial loan officer and in other positions. He is presently employed at a bank as a vice president handling commercial loans. His gross weekly pay is $1423. His net weekly pay is $972. In addition, he has VA benefits of $21 weekly, and net dividend and interest income of $15 weekly. His total net weekly income is $1008. The defendant has a 10 percent service disability for which he receives the $21 weekly payment. The premium on his $10,000 U.S. government policy is paid for from his VA benefit. The defendant does not have any liabilities. He has a total of $12,679 in bank accounts and $20,371 in stock. He also has series E/EE bonds with a value of $5066. The defendant has a much greater earning capacity at the present time than the plaintiff.
Up until approximately 1993, the parties did not have any problems within the marriage. Commencing 1993, the defendant became more distant. He would not communicate with the plaintiff. He started to spend more time with a female companion. When the plaintiff questioned him in 1993 as to what was going on with that relationship with the female in question, he stated that nothing was going on, and that he and the other woman were just good friends. The defendant became sexually involved with the other woman in June of 1993. He lied to the plaintiff for approximately one year regarding that relationship. The parties separated in May of 1994. Between January 1, 1994 and the end of May, 1994, the relationship between the plaintiff and the defendant became worse. During that period of time, the plaintiff CT Page 5118-X commenced therapy. In March of 1994, the defendant again denied that he was involved in an affair with the other woman. In May of 1994, he stated to the plaintiff that he loved both the plaintiff and the other woman. The plaintiff asked that he terminate his relationship with the other woman. He refused to do so. He also refused counseling prior to May of 1994. From the evidence presented, the court finds that the primary cause of the breakdown of the marriage was the defendant's relationship with another woman. Additional causes of the breakdown consisted of the plaintiff drinking too much, as well as becoming irritable and adversarial. Her excessive drinking commenced after the defendant became involved with the other woman.
The parties previously owned a family home at 15 Rolling Ridge Road, Ridgefield, Connecticut. The home was sold on July 25, 1994, as a result of advice that the parties received from a mediator. The parties equally divided the net proceeds from the sale of the home with each party receiving approximately $65,000. Each party used the money received to buy another home. The plaintiff purchased her present home on September 29, 1995, for $147,000. The parties also divided the household furnishings that they owned by themselves.
Under the child support guidelines, the amount of support that the defendant should pay to the plaintiff is $196 weekly. From the evidence presented, the court finds that the plaintiff will be allowed to claim head of household status under the existing IRS regulations, even if the defendant is allowed to claim the child as an exemption for federal and state income tax purposes. The support guideline amount is based on the defendant having a cost to maintain the child for health insurance benefits of $9.36 dollars weekly. The defendant, in his claim for relief, seeks to have the court deviate from the child support guidelines by ordering a higher weekly support amount but no alimony. The court finds that the amount of current support calculated under the child support guidelines is correct, and that the presumption that it is correct has not been rebutted in this case. There is no basis to find that the guidelines would be inequitable or inappropriate in this case.
The cost of providing COBRA health insurance for the plaintiff through the defendant's employment will be $168.91 monthly for the health insurance, and dental insurance will be additional. There are two options available with the dental coverage, one option at a cost of $28 monthly that includes CT Page 5118-Y orthodontia, and a second option of $21.42 monthly that does not include orthodontia.
The court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-56 and § 46b-56a regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint custody of the minor child, whose primary residence will be with the plaintiff wife, and that the father shall have reasonable and liberal rights of visitation, which shall include, but not be limited to: (a) alternate weekends from 6:00 p. m. on Friday to 9:00 p. m. on Sunday; (b) every Tuesday evening from 6:00 p. m. to 9:00 p. m.; and (c) two weeks during the summer school vacation. In addition, the parties shall alternate Christmas Day, Christmas Eve, Thanksgiving and Easter Sunday, and the minor child shall always be with the father on Father's Day and always be with the mother on Mother's Day, regardless of the normal schedule.
C. BY WAY OF SUPPORT
1. The court orders that the defendant pay to the plaintiff, by way of support, the sum of $196 weekly by immediate wage execution.
2. The defendant is ordered to provide health insurance for the minor child under whatever health insurance is available to him through his place of employment for so long as he is obligated to pay child support. Any uncovered or unreimbursed health expenses for the minor child are to be divided equally between the parties. CT Page 5118-Z
3. The defendant husband shall maintain insurance on his life for the benefit of the minor child in the following amounts and for the following periods: for the first year following this order, $125,000; second year, $105,000; third year, $85,000; fourth year, $65,000; fifth year, $45,000; sixth year, $22,500. In the event that the plaintiff wife shall cohabit or remarry, the life insurance which the defendant husband is obligated to provide shall be reduced to the following amounts: for the first year following this order, $80,000; second year, $65,000; third year, $55,000; fourth year $45,000; fifth year $30,000; sixth year $15,000.
4. The defendant shall have the right to claim the minor child as an exemption for federal and state income tax purposes provided he is current in both his support and alimony payments, to the extent alimony payments are required to be made, at the end of the calendar year for which such exemption is claimed.
D. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $205 per week.
2. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; or (c) the remarriage of the plaintiff.
3. The provisions of §§ 46b-86(a) and 46b-86(b) are applicable.
4. The defendant is to provide health insurance for the plaintiff under COBRA for the maximum period allowed by law, including orthodontia coverage. The parties are to divide equally the cost of said COBRA coverage.
E. BY WAY OF PROPERTY ORDERS
1. The court assigns to the plaintiff by QDRO, one-half of the market value of all of the deferred compensation plans shown on the defendant's financial affidavit. Said one half is to also have an approximate equal basis. The court retains jurisdiction over any disputes that may arise involving the QDRO, including the language thereof. Counsel for the plaintiff is to prepare and sign the QDRO, and send it to counsel for the defendant for signature, and return to counsel for the plaintiff with counsel CT Page 5118-AA for the plaintiff to forward it to the proper party for implementation.
2. The 1992 Saturn motor vehicle shown on the defendant's financial affidavit is awarded to the defendant.
3. All personal property and furniture in the possession of the defendant is awarded to the defendant.
4. Six thousand five hundred ($6500) dollars from the defendant's Fleet bank accounts is assigned to the plaintiff. This assignment is to be completed within thirty days from today's date. The balance in the Fleet bank accounts is awarded to the defendant. In the event there is not at least $6500 in the defendant's Fleet bank accounts, then the defendant is to pay the difference to the plaintiff.
5. The Fleet financial stocks and bonds shown on the defendant's financial affidavit are ordered divided equally between the parties, both as to fair market value and basis. This assignment is to be completed within thirty days of today's date.
6. Five thousand ($5000) dollars of the cash surrender value of the life insurance policies shown on the defendant's financial affidavit is awarded to the plaintiff. This transfer is to be completed within thirty days from today's date. The balance of the cash surrender value on the life insurance policies is awarded to the defendant. In the event that there is not at least $5000 in cash surrender value in the life insurance policies shown on the defendant's financial affidavit, then the defendant is to pay the difference to the plaintiff.
7. The series E and series EE bonds in the defendant's name and in the defendant's possession are awarded to the defendant.
8. The series E and series EE bonds in the plaintiff's name that are in the possession of the defendant are awarded to the plaintiff. The defendant is to transfer those bonds to her within thirty days of today's date.
9. All furniture and personal property in the possession of the plaintiff is awarded to the plaintiff.
10. The Ridgefield bank account shown on the plaintiff's financial affidavit is awarded to the plaintiff. CT Page 5118-BB
11. The Banker's Trust stock shown on the plaintiff's financial affidavit is awarded to the plaintiff.
12. The plaintiff is to pay the liability shown on her financial affidavit and hold the defendant harmless herefrom.
13. The plaintiff is awarded all of her interest in her home shown on her financial affidavit, and the defendant is awarded all of his interest in his home shown on his financial affidavit.
14. The defendant's VA disability benefits are assigned solely to the defendant.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt, or registered mail, return receipt, for so long as there is an outstanding alimony and/or support order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
Axelrod, J.